## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                           No. CR 09-3081 JB

ROGER MANZANERES-SANABRIA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Obejections [sic] to the Pre-sentence Investigation Report and Sentencing Memorandum, filed February 21, 2011 (Doc. 71)("Objections and Sentencing Memorandum"). The Court held a hearing on March 9, 2011. The primary issue is whether, pursuant to U.S.S.G. § 3E1.1(a), the Court should decrease Defendant Roger Manzanares-Sanabria's offense level by 2 levels for acceptance of responsibility. The Court concludes that, because Manzanares-Sanabria did not plead guilty to his charged offense until the morning his trial was scheduled to commence, he is not entitled to a 2-level reduction for acceptance of responsibility. His eleventh-hour plea necessitated that Plaintiff United States of America invest significant trial preparation, including transporting witnesses from across the state, and inconvenienced the jury pool, which was already assigned to the trial and at the courtroom door when Manzanares-Sanabria announced his decision to plead guilty. The Court therefore will not decrease Manzanares-Sanabria's offense level for his acceptance of responsibility.

## FACTUAL BACKGROUND

Manzanares-Sanabria was born in Honduras to unmarried parents who separated when he

was a toddler.  <u>See</u> Presentence Investigation Report ¶ 28, at 9 (disclosed January 18, 2011)("PSR").

His great aunt raised him until she passed away when he was in sixth grade.  <u>See</u> PSR ¶ 28, at 9.

After her death, Manzanares-Sanabria lived with his aunt's children until he was in high school,

when he went to live with a family friend.  <u>See</u> PSR ¶ 28, at 9.  Manzanares-Sanabria states that he

first came to the United States in 1986 when he was twenty-three-years old and lived in San

Francisco, California, for about ten years.  <u>See</u> PSR ¶ 31, at 10.  Immigration records show that

Manzanares-Sanabria entered the United States legally on May 5, 1995, and that he was given a

social security number.  <u>See</u> PSR ¶ 32, at 10.  In 1999, Manzanares-Sanabria moved to Texas, and

two years later he moved to New Jersey.  <u>See</u> PSR ¶ 31, at 10.  In September 2002, he was arrested

in New Jersey on charges of second degree robbery, unlawful possession of a weapon, and

possession of a weapon for unlawful purposes.  <u>See</u> PSR ¶ 23, at 8.  He was convicted at trial of the

second-degree robbery charge, and the latter two counts were dismissed.  <u>See</u> PSR ¶ 23, at 8.

Manzanares-Sanabria was sentenced on November 20, 2003, to seven-years imprisonment with

three years mandatory supervision.  <u>See</u> PSR ¶ 23, at 8.  On August 15, 2008, his mandatory

supervision commenced, and on September 26, 2008, he was deported to Honduras.  <u>See</u> PSR ¶ 23,

at 8.  His mandatory supervision term expires on August 15, 2011.  <u>See</u> PSR ¶ 23, at 8.

On August 22, 2009, United States Border Patrol agents agent arrested Manzaneras-Sanabria

in the State and District of New Mexico.  Agents spotted Manzanares-Sanabria and three others

walking north from the international border west of Columbus, New Mexico, Port of Entry.  <u>See</u>

PSR ¶ 5, at 3.  Manzanares-Sanabria admitted he was a citizen of Honduras without any immigration

documents.  <u>See</u> PSR ¶ 5, at 3.

## PROCEDURAL BACKGROUND

On October 21, 2009, a federal grand jury returned an Indictment against Manzanares-Sanabria for reentry of a removed alien, in violation of 8 U.S.C. § 1326(a) and (b).  He was arraigned on October 28, 2009, and pled not guilty.  See Clerk' Minutes of Arraignment, filed October 28, 2009 (Doc. 11).  Manzanares-Sanabria was scheduled to go to trial on December 14, 2009.  See Notice of Jury Selection/Jury Trial, filed November 5, 2009 (Doc. 13).  On December 10, 2009, the United States filed a motion, to which Manzanares-Sanabria concurred, requesting to continue the trial, because the parties were "still exchanging discovery and [we]re negotiating a resolution of the case that will may not involve a trial."  Unopposed Motion to Continue Trial Setting, filed December 10, 2009 (Doc. 14).  That same day, the Court filed an Order continuing the trial until January 11, 2010.  See Doc. 15.

After a series of delays relating to discovery and Manzanares-Sanabria's counsel's scheduling conflicts, Manzanares-Sanabria's trial was set for May 17, 2010.  On April 26, 2010, Manzanares-Sanabria filed his Third Joint Motion to Continue Trial Setting, see Doc. 23, in which he moved to continue the trial again, stating that he "had been set for a plea hearing but the hearing was continued based of health issues.  This matter should be set for a plea as soon a[s] counsel for defendant address any pending health issues." Defendant's Third Joint Motion to Continue Trial Setting ¶¶ 2-3, at 1.  Manzanares-Sanabria was scheduled to have a plea hearing on May 24, 2010.  On the day the hearing was scheduled, after Manzanares-Sanabria was sworn in, he did not change his plea.  Instead he requested new counsel.  The Honorable W. Daniel Schneider, United States Magistrate Judge, denied his request and vacated the plea hearing.  See Plea Minute Sheet, filed May 24, 2010 (Doc. 27).

On August 3, 2010, Manzanares-Sanabria his Fourth Joint Motion to Continue Trial Setting,

requesting to continue trial then scheduled for August 16, 2010, stating:

> Manzanares has expressed his desire not to try this case, on the one hand and not to accept the plea offer made by the Government, on the other hand.  Manzanares has filed a motion for new counsel. Manzanares believes that new counsel would result in a different plea offer or pleading which would result in reducing his sentencing exposure.

Defendant's Fourth Joint Motion to Continue Trial Setting at 1, filed August 3, 2010 (Doc. 32).  On August 5, 2010, the Court filed its Stipulated Order Continuing Trial Setting, continuing the trial until October 18, 2010.  See Doc. 33.

On November 30, 2010, the Court held a pretrial conference and a hearing on the United States's Motion in Limine to Exclude Evidence, filed October 2, 2010 (Doc. 34).  On December 2, 2010, the Court issued a Memorandum Opinion and Order, see Doc. 60, granting the United States' motion.  Because a defendant's intent or motive is not relevant to an element of or defense to the offense of illegal reentry, see United States v. Hernandez-Hernandez, 519 F.3d 1236, 1239 (10th Cir. 2008); United States v. Hernandez-Baide, 392 F.3d 1153, 1158 (10th Cir. 2004), judgment vacated by 544 U.S. 1015 (2005), opinion reinstated by 146 F. App'x 302 (10th Cir. 2005)(holding that the prohibition on illegal reentry "impose[s] a form of strict liability," and that an alien who unlawfully reenters the United States is subject to criminal liability "regardless of the underlying motivation for such illegal entry"  (citations omitted)); United States v. Miranda-Enriquez, 842 F.2d 1211, 1212-13 (10th Cir. 1988)(holding that the United States need not prove that the defendant had an intent to break the law); United States v. Martinez-Morel, 118 F.3d 710, 712-13 (10th Cir. 1997)("'[T]he intent to do the act of entering the country' . . . will suffice to support a conviction under Section 1326's provision. . . .  [T]he defendant's belief about whether he was deported is not 'of consequence to the determination of the action.'"  (citations omitted)), the Court prohibited Manzaneras-Sanabria from mentioning or putting forth in any manner in the jury's presence

-4-

evidence: (I) that Manzaneras-Sanabria was not aware that he entered the United States illegally; (ii) that Manzaneras-Sanabria was under the mistaken belief that he was authorized to enter the United States; (iii) that Manzaneras-Sanabria was not aware of his prior deportation when he entered the United States; or (iv) that Manzaneras-Sanabria returned for a reason.

On October 6, 2010, the Court appointed Manzanares-Sanabria new counsel, Ms. Christin Kennedy. See Order on Motion for Substitution of Counsel by Appointment, filed October 6, 2010 (Doc. 43). On the United States' Unopposed Motion to Continue Trial Setting, filed October 11, 2010 (Doc. 46), the Court continued the trial until December 6, 2010 to allow Manzanares-Sanabria's new counsel time to prepare for trial. See Order, filed October 18, 2010 (Doc. 47)(continuing the trial setting until November 15, 2010); Order Granting Continuance of Trial, filed November 15, 2010 (Doc. 50)(continuing the trial setting until December 6, 2010, because "counsel for both the government and the Defendant have conflicting trial schedules and need additional time to be present at and prepared for the trial in this matter").

Manzanares-Sanabria was scheduled to go to trial on December 6, 2010. On December 6, 2010, the United States assembled its witnesses at the courthouse, including witnesses from Virginia, Louisiana, and throughout New Mexico. The Court assembled a venire. That same morning, Manzanares-Sanabria announced that he wished to plead guilty to the charge in the Indictment. See Transcript of Hearing at 4:23-5:2 (taken December 6, 2010)("December 6, 2010 Tr.")("[MANZANARES-SANABRIA:]   There's no need for trial because I can sign because I accept my responsibility on the one hand and on the other hand if there's as to the felony if there's nothing that can be done well then there's nothing to do and I apologize.").[1]

---

[1] The Court's citations to the transcripts are to the Court Reporter's original, unedited versions. Any final versions may contain slightly different line or page numbers.

Ms. Kennedy represented that the United States had offered Manzanares-Sanabria a plea bargain that was contingent upon Manzanares-Sanabria accepting it by Thursday, December 2, 2010. December 6, 2010 Tr. at 6:12-20 (Kennedy).  Ms. Kennedy represented that Manzanares-Sanabria refused to accept the plea agreement on December 2, 2010, and that she had explained to him at that time that the United States had conditioned the plea agreement on the deadline.  See December 6, 2010 Tr. at 6:20-21 (Kennedy).  Ms. Kennedy also acknowledged that Manzanares-Sanabria "had several other opportunities to come before the Court and take a plea of guilty."  December 6, 2010 Tr. at 6:21-23 (Kennedy).  Manzanares-Sanabria stated that he did not accept the United States' plea bargain during the week before trial because he had a migraine, suffers from depression, and he did not have his glasses.  See December 6, 2010 Tr. at 4:20-25, 5:20-22 ("[MANZANARES-SANABRIA:] I didn't h[ave] my glasses last week . . . .  My point was last week I was feeling ill with the migraine and that was the problem evidently and now I have taken my medication and I'm feeling better.").

The United States asserted that "Manzanares-Sanabria ha[d] continually engaged in delay tactics" and that its "position [wa]s there's no need for taking time to discuss plea negotiations, because there aren't any."  December 6, 2010 Tr. at 8:9-17 (Cairns).  The United States took the position that it had assembled its witnesses and prepared for trial, and that Manzanares-Sanabria "might as well watch [it] put on [its] case," because he was not entitled to credit for acceptance of responsibility in light of his "delay tactics."  December 6, 2010 Tr. at 8:17-9:3 (Cairns).  The United States asserted that Manzanares-Sanabria was "just playing games," noting that it had gone to "great expense" to prepare for trial, including bringing witnesses in from out of state, and stated that it could not "stop him from pleading guilty to the Indictment, but it recommend just go[ing] forward with the presentation of evidence."  December 6, 2010 Tr. at 10:23-11:5:3 (Cairns).  The United

States cautioned Manzanares-Sanabria that the Honorable William P. Johnson, United States District Court Judge for the District of New Mexico, had recently refused to decrease the offense level for reduction for acceptance of responsibility for a defendant that pled guilty to illegal reentry charges the morning his trial was to commence.  See December 6, 2010 Tr. at 10:13-23 (Cairns).

The Court stated that it could not immediately determine whether, pursuant to U.S.S.G. § 3E1.1(a), a 2-level decrease for acceptance of responsibility reduction would apply:

> THE COURT: . . . I can't say anything about the acceptance of responsibility without more information about it.  I have held in the past that . . . a third level for acceptance of responsibility . . . [is] solely within the Government's discretion.  As far as the other two points, I can't say. . . .  I'm aware of the circumstances so I'll have to make a decision at [a later] point.  But I can't say on that one.  Do you still wish to plead to the Indictment?
>
> MS. KENNEDY: Judge, that was our discussion, that . . . it would be a lot harder for him to get those points for acceptance of responsibility at this point and he's still inclined.

December 6, 2010 Tr. at 11:6-19.

The Court took Manzanares-Sanabria's guilty plea.[2]  Manzanares-Sanabria pled guilty

---

[2] Before taking his plea, the Court confirmed that Manzanares-Sanabria had taken his medication, and that the medication did not interfere with his ability to understand the proceedings:

> THE DEFENDANT: . . . I get attacks of migraines and I also have [depression] and so I have to take my medication directly.
>
> . . . .
>
> THE COURT: Well, what is his medical condition?  What kind of medicine does he take for the migraines?
>
> THE DEFENDANT: Excedrin.   And they're giving me another one for depression. . . . I don't know the name.
>
> . . . .
>
> THE DEFENDANT: They give me the one.  The depression medication at night and

without a plea agreement to the charge in the Indictment.  <u>See</u> December 6, 2010 Tr. at 15:8-10

_____

> then the Excedrin when I need it.  But that wasn't my point.  My point was last week I was feeling ill with the migraine and that was the problem on evidently and now I have taken my medication and I'm feeling better.
>
> THE COURT: So you've taken your medication today.
>
> THE DEFENDANT: And that's why I said to my attorney last week that she should bring me to court on Friday so I could accept my responsibility but she told me it was already too late and we would have to go to trial today and I don't want it to go any further I feel bad I don't want to go any further I want to accept my responsibility today.
>
> THE COURT: Let me focus on your medication.  You've had your medication this morning you don't need any more medication today?
>
> THE DEFENDANT: No.  It's fine.
>
> . . . .
>
> THE COURT: All right.  Have you been treated recently for any mental illness or addiction to narcotic drugs much any kind?
>
> THE DEFENDANT: I was only taking medication for depression and for migraines.
>
> THE COURT: All right and you've taken your medications that you need to take today?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And are you currently under the influence of any drugs, medication or alcoholic beverages of any kind?  Are you under any of those?
>
> THE DEFENDANT: No.  I took my medication but I'm fine.
>
> THE COURT: All right.  Is there anything any drugs or alcoholic beverages that would keep you from understanding what's taking place this morning?
>
> THE DEFENDANT: No.

December 6, 2010 Tr. at 4:20-6:9, 13:2-18.

("THE COURT: And we are confirming on the record that the plea is being made -- is not being made pursuant to a plea agreement of any kind, correct? MS. KENNEDY: Correct."). Manzanares-Sanabria accepted responsibility for illegally reentering the United States.  See December 6, 2010 Tr. at 15:8-10 ("THE COURT: Why are you pleading guilty this morning?  THE DEFENDANT: Because I honestly am guilty of reentry.").

On January 18, 2011, the United States Probation Office ("USPO") disclosed Manzanares-Sanabria's PSR.  The USPO calculated Manzanares-Sanabria's adjusted offense level to be 24 and his criminal history category to be III, resulting in a guideline imprisonment range of 63 to 78 months.  The USPO found no grounds for any downward departure.  See PSR ¶ 49, at 14.  In particular, the USPO did not apply a reduction in Manzanares-Sanabria's offense level for acceptance of responsibility under U.S.S.G. § 3E1.1, because application note 1(H) provides that "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility" is a factor to determine whether a defendant qualifies for an acceptance of responsibility adjustment, and, "[a]lthough the defendant did provide the probation department with a statement of acceptance of responsibility on January 11, 2011," Manzanares-Sanabria "does not appear genuine in his acceptance of responsibility as he entered into a guilty plea at the 'eleventh' hour after the Government and the Court had expended resources preparing for trial."  PSR ¶ 19, at 7.

On February 21, 2011, Manzanares-Sanabria filed his Objections and Sentencing Memorandum.  Manzanares-Sanabria objects that the PSR does not provide a 2-level reduction for acceptance of responsibility, under U.S.S.G. § 3E1.1(a).  He argues that "probation did not include this decrease in its offense calculation due to the fact that there was not a written plea agreement in this case, Mr. Manzanares-Sanabria pled guilty on the day of trial and, in probation's opinion, did therefore did not appear 'genuine' in his acceptance of responsibility."  Objections and Sentencing

-9-

Memorandum at 3.  He contends that the Court should decrease his offense level by 2 levels, because he "took responsibility before the trial began" and, "through counsel, provided to probation a statement accepting responsibility."  Objections and Sentencing Memorandum at 3.

On February 28, 2011, the USPO disclosed its Second Addendum to the Presentence Report, addressing Manzanares-Sanabria's objections.  In response to Manzanares-Sanabria's objection that he should have received a reduction for acceptance of responsibility, the USPO noted that "the defendant's guilty plea does not automatically entitle the defendant to a reduction."  Second Addendum at 1.  The USPO further noted that Manzanares-Sanabria's eleventh-hour plea came only after the United States and the Court expended resources preparing for trial, including providing lodging and travel for witnesses and summons for potential jurors.  The USPO states:

> Although the defendant did provide the probation department with a statement of acceptance of responsibility on January 11, 2011, the defendant does not appear genuine in his acceptance of responsibility as he entered in a guilty plea at the "eleventh" hour after the Government and the Court had expended resources preparing for trial.  Therefore, the United States Probation Office stands by its assessment and believes that the defendant should not be awarded a reduction of two-levels for acceptance of responsibility.

Second Addendum at 1.

On February 28, 2011, the United States filed its Response to Defendant's Sentencing Memorandum.  See Doc. 72 ("Response").  The United States opposes any departure or variance from the guideline imprisonment range.  In particular, the United States asserts that the Court should not decrease Manzanares-Sanabria's offense level for acceptance of responsibility.  It contends:

> Defendant entered a guilty plea on the day of trial after: 1) the government had expended significant time and energy preparing for trial; 2) the government had incurred all of the expenses associated with the trial, including travel and lodging for 5 witnesses, 1 of which had come from Virginia, another from Louisiana, and 3 from southern New Mexico; and 3) the Court had summoned potential jurors for the trial. The Defendant was clearly testing the government's resolve, and entered a guilty plea only after it was clear that the government was ready for trial and that a

-10-

conviction loomed.  Such gamesmanship hardly reflects a sincere acceptance of responsibility.

Response at 2.

At the March 9, 2011 sentencing hearing, the parties argued in support of the positions stated in their briefs.  Ms. Kennedy again stated that the United States had offered Manzanares-Sanabria "one last shot at" a plea agreement that was conditioned on his acceptance by December 2, 2010, but that Manzanares-Sanabria was not feeling well and "he didn't have his glasses on top of it so he couldn't really read anything."   Transcript of Hearing at 3:14-23 (taken March 9, 2011)(Kennedy)("March 9, 2011 Tr.").  Ms. Kennedy argued that Manzanares-Sanabria nonetheless truthfully admitted his conduct, and that he therefore qualifies for and acceptance of responsibility.  See March 9, 2011 Tr. at 4:2-16 ("[MS. KENNEDY:] it wasn't necessarily as timely as the Government wanted him to make it, but he did come in on that day and he did accept responsibility for what happened and he did it very clearly.").  The United States responded that the untimeliness of Manzanares-Sanabria's guilty plea rendered him ineligible for any acceptance of responsibility reduction.  The United States noted that it had expended resources preparing for trial and bringing in witnesses.  See March 9, 2011 Tr. at 5:16-7:9 (Cairns).  The United States also asserted that decreasing Manzanares-Sanabria's offense level would send the wrong signal, suggesting that a defendant can wait until the last minute before finally admitting guilt, forcing the United States to prepare for trial and the Court to assemble venire, without consequence.  See March 9, 2011 Tr. at 7:9-16 (Cairns).  The Court stated that it would take the question whether it should decrease Manzanares-Sanabria's offense level by 2 levels for his acceptance of responsibility under advisement.  See March 9, 2011 Tr. at 25:15-16.

At the hearing, the United States asserted that it might send along additional authority

supporting its contention that the Court can decline to reduce Manzanares-Sanabria's sentence because his acceptance of responsibility was untimely. See March 9, 2011 Tr. at 13:11-15 (Cairns). On March 10, 2011, the United States filed its Notice of Additional Authority. See Doc. 75. The United States directs the Court to that United States Court of Appeals for the Tenth Circuit's opinion in United States v. White, 36 F.3d 1106 (10th Cir. 1994)(table).

## LAW REGARDING REDUCTIONS FOR ACCEPTANCE OF RESPONSIBILITY UNDER U.S.S.G. § 3E1.1.

The defendant has the burden of proving by a preponderance of the evidence that he or she is entitled to a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). See United States v. Meyers, 95 F.3d 1475, 1486 (10th Cir. 1996); United States v. McMahon, 91 F.3d 1394, 1396-97 (10th Cir.), cert. denied, 519 U.S. 1018 (1996). The Tenth Circuit reviews "a district court's determination not to grant a reduction for acceptance of responsibility for clear error." United States v. Ochoa-Olivas, No. 10–2250, 2011 WL 2160551, at *2 (10th Cir. June 2, 2011)(citing United States v. Hutchinson, 573 F.3d 1011, 1032 (10th Cir.2009)). In reviewing the district court's findings, the Tenth Circuit "remain[s] mindful that '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.'" United States v. Ivy, 83 F.3d 1266, 1292-93 (10th Cir.)(quoting U.S.S.G. § 3E1.1 application note cmt. 5), cert. denied, 519 U.S. 901 (1996).

U.S.S.G. § 3E1.1 provides:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the

investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1.  The application notes to U.S.S.G. § 3E1.1(a) state in relevant part:

> **1.** In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:
>
>> **(A)** truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a).  A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection.  However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;
>
>> **(B)** voluntary termination or withdrawal from criminal conduct or associations;
>
>> **(C)** voluntary payment of restitution prior to adjudication of guilt;
>
>> **(D)** voluntary surrender to authorities promptly after commission of the offense;
>
>> **(E)** voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;
>
>> **(F)** voluntary resignation from the office or position held during the commission of the offense;
>
>> **(G)** post-offense rehabilitative efforts (e.g., counseling or drug treatment); and
>
>> **(H)** the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.
>
> **2.** This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.  Conviction by trial,

however, does not automatically preclude a defendant from consideration for such a reduction.  In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.  This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).  In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

**3.** Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct) (see Application Note 1(A) ), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a).  However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

. . . .

**5.** The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.  For this reason, the determination of the sentencing judge is entitled to great deference on review.

**6.** Subsection (a) provides a 2-level decrease in offense level.  Subsection (b) provides an additional 1-level decrease in offense level for a defendant at offense level 16 or greater prior to the operation of subsection (a) who both qualifies for a decrease under subsection (a) and who has assisted authorities in the investigation or prosecution of his own misconduct by taking the steps set forth in subsection (b).  The timeliness of the defendant's acceptance of responsibility is a consideration under both subsections, and is context specific.  In general, the conduct qualifying for a decrease in offense level under subsection (b) will occur particularly early in the case.  For example, to qualify under subsection (b), the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently.

Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing. See section 401(g)(2)(B) of Pub. L. 108-21.

**Background:** The reduction of offense level provided by this section recognizes legitimate societal interests.   For several reasons, a defendant who clearly

-14-

demonstrates acceptance of responsibility for his offense by taking, <u>in a timely fashion</u>, the actions listed above (or some equivalent action) is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility.

Subsection (a) provides a 2-level decrease in offense level.  Subsection (b) provides an additional 1-level decrease for a defendant at offense level 16 or greater prior to operation of subsection (a) who both qualifies for a decrease under subsection (a) and has assisted authorities in the investigation or prosecution of his own misconduct by taking the steps specified in subsection (b).  Such a defendant has accepted responsibility in a way that ensures the certainty of his just punishment in a timely manner, thereby appropriately meriting an additional reduction.  Subsection (b) does not apply, however, to a defendant whose offense level is level 15 or lower prior to application of subsection (a).  At offense level 15 or lower, the reduction in the guideline range provided by a 2-level decrease in offense level under subsection (a) (which is a greater proportional reduction in the guideline range than at higher offense levels due to the structure of the Sentencing Table) is adequate for the court to take into account the factors set forth in subsection (b) within the applicable guideline range.  Section 401(g) of Public Law 108-21 directly amended subsection (b), Application Note 6 (including adding the last paragraph of that application note), and the Background Commentary, effective April 30, 2003.

U.S.S.G. § 3E1.1 application notes & background (emphasis added).

The Tenth Circuit has held that a district court may deny a defendant any reduction for acceptance of responsibility solely on the basis of timeliness.  In <u>United States v. Ochoa-Olivas</u>, the Tenth Circuit addressed whether a defendant who pled guilty to one count of illegal reentry the morning his trial was scheduled to commence was entitled to a 2-level reduction in his offense level under U.S.S.G. § 3E1.1(a).  On the day trial was to commence, "the district court assembled the jury venire, but they were dismissed when Ochoa-Olivas announced that he wanted to plead guilty.  After that announcement, the district court conducted a change-of-plea hearing, and Ochoa–Olivas pled guilty to the one count" of illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b).  2011 WL 2160551, at *1.  The USPO released a PSR, which, pursuant to U.S.S.G. § 3E1.1(a), included a 2-level reduction for acceptance of responsibility.  The United States objected to the reduction, and "argued that it expended resources in preparing for trial and in providing travel and lodging for

witnesses to attend the trial.  Therefore, it argued that [the defendant] should not be entitled to any reduction for acceptance of responsibility." 2011 WL 2160551, at *2.  The district court agreed with the United States and denied the defendant a 2-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), stating that "a two-level reduction for acceptance of responsibility is not appropriate because the Defendant waited until the morning of trial to plead guilty."  2011 WL 2160551, at *2.

The defendant in United States v. Ochoa-Olivas appealed, "contend[ing] that the district court clearly erred because it should have granted a two-level downward adjustment as he met the criteria for acceptance of responsibility" under U.S.S.G. § 3E1.1(a), and the United States "counter[ed] that the 'timing of the decision to plead guilty is important precisely because the adjustment was meant to expedite resolution of cases, and thereby to prevent prosecutive and judicial resources from being expended needlessly.'"  2011 WL 2160551, at *2 (citation to the record omitted).  The Tenth Circuit affirmed the district court, stating:

> The Sentencing Guidelines explicitly allow the district court to consider the timeliness of a defendant's guilty plea. U.S.S.G. § 3E1 .1 cmt. n.1(h).  We caution that a late decision to plead guilty does not necessarily disqualify a defendant from receiving a downward adjustment for acceptance of responsibility.  But a defendant who pleads guilty does not necessarily qualify for a downward adjustment for acceptance of responsibility either. See id. § 3E1.1 cmt. n. 3. It is up to the district court to determine whether a defendant qualifies for this downward adjustment using the appropriate considerations.  In this case, the district court did just that, and therefore we cannot say that the district court committed clear error.

2011 WL 2160551, at *2.

Similarly, in United States v. Gonzalez Gomez, 85 F. App'x 94 (10th Cir. 2003), the Tenth Circuit affirmed a district court's refusal to decrease the offense level of a defendant who, "[o]n August 16, 2002, the same day of [his] trial, he very reluctantly pled guilty" and "informed the assigned probation officer of his intent to return to the United States despite agreeing not to."  85

F. App'x at 95.  The Tenth Circuit affirmed the district court, holding that the defendant's "reluctant plea on the day of trial, coupled with his declared intent to continue to violate the law as he had done previously, undermines his argument that he accepts responsibility for his criminal conduct."  85 F. App'x at 95-96.

In its Notice of Additional Authority, the United States directs the Court to <u>United States v. White</u>, which the United States "concedes . . . is not directly on point and is not mandatory authority, but [notes that] it is perhaps, persuasive."  Notice of Additional Authority at 1.  In <u>United States v. White</u>, the Tenth Circuit addressed whether a defendant who pleads guilty to a charge shortly before trial should receive a 2-level downward departure for "clearly demonstrat[ing] acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  In that case, "[v]irtually on the eve of trial, White agreed to plead guilty to a single-count information charging conspiracy to distribute marijuana."  36 F.3d 1106, at *1.  The Defendant also tested positive for cocaine use while on pretrial release.  The Tenth Circuit stated:

> White contends that he should have received a two-point reduction of his offense level for acceptance of responsibility.  USSG 3E1.1(a).  He bases this claim on the facts that he pled guilty and later admitted (with one exception) to the offense and relevant conduct facts recited in the PSR.  He argues that his refusal to cooperate with the probation officer does not detract from his acceptance of responsibility since note 1(a) to USSG 3E1.1 provides that "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a)." USSG 3E1.1, comment. (n.1(a)).

> The sentencing guidelines provide for a two-level reduction if a defendant "clearly demonstrates acceptance of responsibility for his offense." USSG 3E1.1. However, "[a] defendant who enters a guilty plea is not entitled to an adjustment . . . as a matter of right." USSG 3E1.1, comment. (n.3). The court may "consider the timing of [a defendant's] statement in determining if his acceptance was genuine." <u>United States v. Wach</u>, 907 F.2d 1038 (10th Cir.1990). Additionally, a defendant's "voluntary termination or withdrawal from criminal conduct or associations" should be considered in determining whether he has accepted responsibility. USSG 3E1.1, comment. (n.1(b)). Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," our

-17-

review of the court's finding must be highly deferential.  USSG 3E1.1, comment. (n.5).  Thus, we review the court's determination as a finding of fact under the clear error standard.  See United States v. Tovar, 27 F.3d 497, 498 (10th Cir. 1994).  The defendant has the burden of proving, by a preponderance of the evidence, that he has accepted responsibility. Id.

Applying these standards, we cannot say that the district court clearly erred when it concluded that Mr. White was not entitled to a two-level reduction for acceptance of responsibility.

White's argument that he was improperly penalized for refusing to discuss his involvement in the cocaine conspiracy, as opposed to the marijuana conspiracy, fails for two reasons.  First, it was raised for the first time on appeal. . . .  Second, White refused to discuss with the probation officer not only the relevant conduct involving cocaine but also the offense conduct involving marijuana.  His refusal to cooperate with the officer with respect to the details of his offense conduct, even on advice of counsel, can justify the denial of a reduction for acceptance of responsibility.  See United States v. Trujillo, 906 F.2d 1456, 1460-61 (10th Cir.), cert. denied, 498 U.S. 962 (1990).  His general admission at sentencing and his "eleventh hour expression of remorse" brought the sincerity of his acceptance into question. Wach, 907 F.2d at 1040.

36 F.3d 1106, at *3.  The Tenth Circuit also took into account that White's cocaine use violated his pretrial release conditions, and stated that White continued to deny receiving payment for introducing a person to his drug source, contrary to the "the district court's credibility determination and express finding on the point . . . and [the Tenth Circuit noted that] White's failure to accept responsibility for receiving payment in and of itself disqualifie[d] White from the acceptance of responsibility reduction."  36 F.3d 1106, at *4.  Thus, while other factors also informed the Tenth Circuit's analysis, the Tenth Circuit relied in part on the defendant's eleventh hour guilty plea to affirm the district court's denial of an offense level reduction for acceptance of responsibility.

Other United States Courts of Appeals have uniformly held that a district court may refuse a defendant a 2-level reduction pursuant to U.S.S.G. § 3E1.1(a) for an eleventh-hour acceptance of responsibility.  See, e.g.,  United States v. Diaz-Gaudarama, 614 F.3d 387, 390-91 (7th Cir. 2010)(denying 2-level reduction for a defendant who first attempted to enter a guilty plea the day

trial was to commence, before jury selection); United States v. Montero, 336 F. App'x 941, 942 (6th Cir. 2009)(holding that a defendant who pled guilty to conspiracy to induce aliens to enter the United States was not eligible for two-point reduction for acceptance of responsibility, because the defendant "did not offer his plea until the morning his trial was to begin, thus necessitating significant trial preparation by the government and the transportation of witnesses from across the state, and inconveniencing the jury pool which was already assigned to the trial," and stating that "[t]he district court's reliance on the timing of [the defendant's] plea and the context in which it was offered is in full accord with § 3E1.1(a), the explanatory comments accompanying that section, and the cases interpreting and applying it"); United States v. Fischer, 551 F.3d 751, 755 (8th Cir. 2008)("[A] district court in denying an acceptance of responsibility reduction [pursuant to U.S.S.G. § 3E1.1(a)] may consider that the guilty plea was 'of the "last hour" variety, offered on the eve of trial.'" (quoting United States v. Erhart, 415 F.3d 965, 971 (8th Cir. 2005))); United States v. Rosalez-Cortez, 19 F.3d 1210, 1219 (7th Cir. 1993)("A judge may determine that a defendant has failed to accept responsibility by finding that he failed to demonstrate truthfulness and remorse prior to 'the final hour.'" (citations omitted)).  Indeed, the Court did not find, nor did the parties cite a case in which a Court of Appeals did not affirm a district court's denial of a reduction for acceptance of responsibility based on an eleventh-hour plea the day of the trial, but before the trial began.  In United States v. Diaz-Gaudarama, the United States Court of Appeals for the Seventh Circuit affirmed a district court's sua sponte refusal to grant a defendant a 2-level offense level reduction under U.S.S.G. § 3E1.1(a).  The defendant, David Diaz-Gaudarama, appealed the sentence he received after pleading guilty to conspiring to distribute methamphetamine, cocaine, and marijuana. After about a year of delay because of disputes over the defendant's competency, which the district court ultimately concluded to be malingering, Diaz-Gaudarama went to trial.  On the day trial was

-19-

scheduled to commence, Diaz-Gaudarama attempted to enter a guilty plea, which the district court refused, because the defendant stated that he sought to plead guilty to receive medical care.  After the United States rested its case, Diaz-Gaudarama again expressed a desire to plead guilty, this time stating that he was aware of what he had done, and the district court accepted the plea:

> Diaz-Gaudarama's jury trial was scheduled to begin on June 8, 2009.  That day, before jury selection began, Diaz-Gaudarama attempted to plead guilty to the charge contained in the indictment.   During the change of plea hearing, Diaz-Gaudarama admitted several details about the offense.  At the end of the hearing, however, the district court asked Diaz-Gaudarama what medicines he had been taking in the past few days.  Diaz-Gaudarama responded that he was taking a small white pill and he thought it was harming him.  He said he did not know what the pill was supposed to do, but that he was having difficulty swallowing it because something was wrong with his throat.   When the district court informed Diaz-Gaudarama that he would receive a sentence of at least ten years in prison, and up to life, Diaz-Gaudarama responded, "just as long as I get sent to the doctor, you can give me ten years.  You can give me life.  Just make sure I get to the doctor." In light of these statements, the district court refused to accept the guilty plea.

> The government completed its case on the third day of trial.  During an ensuing discussion with the district court concerning his right to testify in his own defense, Diaz-Gaudarama announced again that he wished to plead guilty.  This time, Diaz-Gaudarama informed the district court that he wished to plead guilty because he was, in fact, guilty as charged.  When asked again why he wished to plead guilty, Diaz-Gaudarama stated, "because I don't want to get too much time, and I am also aware of what I have done as well."   After a plea colloquy, the district court accepted Diaz-Gaudarama's guilty plea, and the jury was excused.

614 F.3d at 389.  The USPO prepared a PSR for Diaz-Gaudarama, which included a 2-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), to which neither the United States nor the defendant objected.  "Sua sponte, the district court raised the question of whether Diaz-Gaudarama was entitled to an acceptance-of-responsibility credit."  614 F.3d at 390. After hearing argument from both sides, "the district court declined to allow a reduction for acceptance of responsibility" and "noted that it was not until the eve of trial that Diaz-Gaudarama attempted to plead guilty, and that he did not in fact do so until after the government had presented

its case against him."  614 F.3d at 390.

Diaz-Gaudarama appealed his sentence, and the Seventh Circuit affirmed.  The Seventh Circuit stated:

Under the advisory guidelines, a defendant may receive a two-level decrease in his offense level if he "clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  A district court's decision to award or deny a defendant a reduction for acceptance of responsibility depends heavily on the facts, and is thus reviewed for clear error.  See United States v. McIntosh, 198 F.3d 995, 999 (7th Cir. 2000).

Diaz-Gaudarama argues that his initial plea colloquy on June 8, 2009 [before jury selection], is the sort of full and accurate account of his misconduct contemplated by application note 1(a) to U.S.S.G. § 3E1.1, which identifies as an appropriate consideration "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . . ."  He wants us to focus on his first attempt to plead guilty, because entering a plea of guilty prior to trial and admitting the conduct comprising the offense of conviction is "significant evidence of acceptance of responsibility."  See U.S.S.G. § 3E1.1 n.3.  Of course, the district court did not actually accept Diaz-Gaudarama's plea until after the government had put on its case.  And in any event, a guilty plea before trial "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility."  Id.

We have long held that the last-minute nature of a guilty plea provides a significant basis to deny an acceptance-of-responsibility reduction.  See, e.g., United States v. Carrera, 259 F.3d 818, 827 (7th Cir. 2001) (affirming denial of an acceptance-of-responsibility reduction [pursuant to U.S.S.G. § 3E1.1(a)] for a defendant who attempted to plead guilty on the first day of trial); United States v. Sierra, 188 F.3d 798, 804-05 (7th Cir. 1999) (affirming denial of an acceptance-of-responsibility reduction [pursuant to U.S.S.G. § 3E1.1(a)] for defendant who pleaded guilty on the last business day before trial); United States v. Rosalez-Cortez, 19 F.3d 1210, 1219 (7th Cir. 1993) (affirming denial of an acceptance-of-responsibility reduction [pursuant to U.S.S.G. § 3E1.1(a)] for a defendant who pleaded guilty after a two-day bench trial).  Even when a defendant pleads guilty in a timely manner, statements or conduct inconsistent with acceptance of responsibility may prevent a defendant from receiving a reduction.  Rather than formulating categorical tests, we ask that district courts "assess the defendant's demonstration of 'genuine remorse,' or 'conscience.'"  McIntosh, 198 F.3d at 999-1000 (quoting United States v. Dvorak, 41 F.3d 1215, 1217 (7th Cir. 1994)).

The district court's decision in this case was not clear error.  First, the district court properly relied on the last-minute nature of the plea, as the earliest attempt

Diaz-Gaudarama made to plead guilty occurred on the morning of trial.  See Sierra, 188 F.3d at 804-05.  Second, Diaz-Gaudarama's own statements during his plea colloquy do not reflect remorse, but rather suggest that he pleaded guilty in an attempt to reduce his punishment; he said only that he didn't want to "get too much time" and that he was "aware of what he had done."  Finally, the district court found that Diaz-Gaudarama had faked psychological illness in an attempt to evade punishment. . . . Given Diaz-Gaudarama's attempt to avoid criminal responsibility for his actions, the absence of statements by Diaz-Gaudarama reflecting remorse for his crime, and the last-minute nature of his attempt to plead guilty, he is not entitled to a reduction in his advisory guideline range for acceptance of responsibility.

614 F.3d at 390-91.

## ANALYSIS

The Court will not reduce Manzanares-Sanabria offense level 2 levels for his acceptance of responsibility under U.S.S.G. § 3E1.1(a).  Under U.S.S.G. § 3E1.1(a), "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, [the sentencing court] decrease[s] the offense level by 2 levels."  U.S.S.G. § 3E1.1(a)(emphasis added).  "A defendant who enters a guilty plea is not entitled to an adjustment under [U.S.S.G. § 3E1.1(a)] as a matter of right."  U.S.S.G. § 3E1.1 application notes cmt. 2.  The application notes to U.S.S.G. § 3E1.1(a) provide a non-exhaustive list of eight factors that are appropriate for a court to consider to determine "whether a defendant qualifies under subsection (a)": (I) the defendant "truthfully admitting the conduct comprising the offense(s) of conviction"; (ii) the defendant's "voluntary termination or withdrawal from criminal conduct"; (iii) the defendant's "voluntary payment of restitution prior to adjudication of guilt"; (iv) the defendant's "voluntary surrender to authorities promptly after commission of the offense"; (v) the defendant's "voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense"; (vi) the defendant's "voluntary resignation from the office or position held during the commission of the offense"; (vii) the defendant's participation in "post-offense rehabilitative efforts (e.g., counseling or drug treatment)"; and (vi) "the timeliness of

the defendant's conduct in manifesting the acceptance of responsibility."   U.S.S.G. § 3E1.1 application notes cmt. 1.

The Court concludes that these factors weigh against decreasing Manzanares-Sanabria's offense level.  Of the applicable factors, only the first factor weighs in Manzanares-Sanabria's favor. On the morning that his trial was scheduled to commence, Manzanares-Sanabria admitted to the conduct comprising the offense, <u>see</u> December 6, 2010 Tr. at 15:8-10 (taken December 6, 2010)("THE COURT: Why are you pleading guilty this morning?  THE DEFENDANT: Because I honestly am guilty of reentry."), and he subsequently "provide[d] the probation department with a statement of acceptance of responsibility on January 11, 2011."  PSR ¶ 19, at 7.  The application notes to U.S.S.G. § 3E1.1 state:

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct) (see Application Note 1(A) ), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a).  However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.  A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

U.S.S.G. § 3E1.1 application note cmt. 3.  Manzanares-Sanabria's trial had not commenced when he entered his guilty plea, but the venire was waiting at the courtroom door.  The Court concludes that Manzanares-Sanabria's guilty plea, while "significant evidence of acceptance of responsibility," is "outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility."  U.S.S.G. § 3E1.1 application note cmt. 3.  Specifically, the balance of applicable factors weigh against decreasing Manzanares-Sanabria's offense level.  Manzanares-Sanabria did not voluntary terminate his criminal conduct.  He did not surrender to authorities.  Border Patrol agents intercepted Manzanares-Sanabria after he illegally reentered the United States.  <u>See</u> PSR ¶

5, at 3.  The weightiest factor is Manzanares-Sanabria's untimely acceptance of responsibility.  "The court may 'consider the timing of [a defendant's] statement in determining if his acceptance was genuine.'"  United States v. White, 36 F.3d 1106, at *3 (quoting United States v. Wach, 907 F.2d 1038, 1040 (10th Cir.1990)).  The application notes and background reference the timeliness of a defendant's acceptance of responsibility in three separate sections.  See  U.S.S.G. § 3E1.1 application notes cmt. 1(H)("In determining whether a defendant qualifies under subsection (a), appropriate considerations include . . . the timeliness of the defendant's conduct in manifesting the acceptance of responsibility."); id. cmt. 6 ("The timeliness of the defendant's acceptance of responsibility is a consideration under both subsections, and is context specific."); id. background ("The reduction of offense level provided by this section recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates acceptance of responsibility for his offense by taking, in a timely fashion, the actions listed above . . . is appropriately given a lower offense level . . . .").  "[T]he last-minute nature of a guilty plea provides a significant basis to deny an acceptance-of-responsibility reduction."  United States v. Diaz-Gaudarama, 614 F.3d at 391 (citations omitted)(emphasis added).  Manzanares-Sanabria's plea was untimely; he "did not offer his plea until the morning his trial was to begin, thus necessitating significant trial preparation by the government and the transportation of witnesses from across the state, and inconveniencing the jury pool which was already assigned to the trial."  United States v. Montero, 336 F. App'x 942 (affirming an acceptance of responsibility reduction, because "[t]he district court's reliance on the timing of [the defendant's] plea and the context in which it was offered is in full accord with § 3E1.1(a), the explanatory comments accompanying that section, and the cases interpreting and applying it").  The application notes to U.S.S.G. § 3E1.1(a) state:

> This adjustment is not intended to apply to a defendant who puts the government to

its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1(a) application notes cmt. 2. In the end, there is no meaningful distinction between this case and the facts of United States v. Ochoa-Olivas. While Manzanares-Sanabria's guilty plea made presenting evidence against him to a jury unnecessary, the timing of his plea nonetheless had a similar effect to "put[ing] the government to its burden of proof at trial," because the United States had to complete all of the preparation necessary to go to trial. It had to marshal its evidence and witnesses, including incurring the expense of providing travel and lodging for witnesses from out of state. Manzanares-Sanabria's delay in admitting his guilt did not result from a legitimate basis, such as "mak[ing] a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct." U.S.S.G. § 3E1.1(a) application notes cmt. 2. Manzanares-Sanabria appears to have sought only to delay the resolution of his case. The Court will therefore deny Manzanares-Sanabria's request that it reduce his offense level for his acceptance of responsibility.

Much of the Court's view of Manzanares-Sanabria's last-minute plea is grounded on the kind of trial Manzanares-Sanabria avoided. The Court has been on the bench about eight years, handling hundreds of reentry cases, and has never tried a reentry case. They always plead or, in some rare cases, are dismissed. They are very short, because the elements are simple: (I) the defendant was an alien at the time he or she was found in the United States as alleged in the indictment; (ii) the defendant had been deported or removed previously from the United States; (iii) thereafter the

defendant entered, or was found, in the United States; and (iv) the defendant had not received the consent of the appropriate authority, i.e., the Attorney General or Secretary of Homeland Security, to apply for readmission to the United States since the time of his or her previous deportation.  See 8 U.S.C. § 1326(a)(1), (2); Tenth Circuit Pattern Jury Instructions Criminal 2.05, at 81 (2005).  Nonetheless, they are document intensive, requiring the United States to gather materials.  The Court has to have most of its work done before the trial begins.  Here, the Court had completed proposed preliminary and final jury instructions, and issued an order in limine.  The parties expected the trial to last two days.

While Manzanares-Sanabria pled guilty before the jury was brought into the courtroom and before the trial began, and that factor is significant evidence of acceptance of responsibility, U.S.S.G. § 3E1.1 application note cmt. 3, the fact that practically all the work for the trial was done is also significant evidence that he did not truly accept responsibility.  See United States v. Diaz-Gaudarama, 614 F.3d at 391 ("[T]he last-minute nature of a guilty plea provides a significant basis to deny an acceptance-of-responsibility reduction." (citations omitted)(emphasis added)).  Rather, he was waiting to the last minute to get a better deal or have the United States' case go awry, yet still get a reduction in his offense level.  That motivation shows he sought to game the system, not truly accept responsibility.  Manzanares-Sanabria has the burden of showing by a preponderance of the evidence that he "clearly" accepted responsibility.  U.S.S.G. § 3E1.1.  He has not met that burden.

It may be that, in another case, such as a month long drug-conspiracy trial, a plea on the morning of trial indicates acceptance of responsibility.  New evidence may have come to light.  A plea may have been worked out over the weekend.  But in a two-day illegal reentry trial, where the elements are relatively straightforward, delaying to the morning of trial smacks of something else,

rather than acceptance of responsibility.

In United States v. Ochoa-Olivas, the Tenth Circuit affirmed a district court's refusal to reduce a defendant's offense level for acceptance of responsibility based solely on the defendant's untimely acceptance of responsibility under circumstances virtually identical to those before the Court.  Like Manzanares-Sanabria, the defendant in that case pled guilty to one count of illegal reentry the morning his trial was scheduled to commence.  On the day trial was to commence, "the district court assembled the jury venire, but they were dismissed when Ochoa-Olivas announced that he wanted to plead guilty.  After that announcement, the district court conducted a change-of-plea hearing, and Ochoa–Olivas pled guilty to the one count" of illegal reentry.  2011 WL 2160551, at *1.  At sentencing, the district court denied the defendant a 2-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), stating that "a two-level reduction for acceptance of responsibility is not appropriate because the Defendant waited until the morning of trial to plead guilty."  2011 WL 2160551, at *2.  The defendant appealed, "contend[ing] that the district court clearly erred because it should have granted a two-level downward adjustment as he met the criteria for acceptance of responsibility" under U.S.S.G. § 3E1.1(a), and the United States "counter[ed] that the 'timing of the decision to plead guilty is important precisely because the adjustment was meant to expedite resolution of cases, and thereby to prevent prosecutive and judicial resources from being expended needlessly.'"  2011 WL 2160551, at *2 (citation to the record omitted).  The Tenth Circuit affirmed the district court, stating:

> The Sentencing Guidelines explicitly allow the district court to consider the timeliness of a defendant's guilty plea. U.S.S.G. § 3E1 .1 cmt. n.1(h).  We caution that a late decision to plead guilty does not necessarily disqualify a defendant from receiving a downward adjustment for acceptance of responsibility.  But a defendant who pleads guilty does not necessarily qualify for a downward adjustment for acceptance of responsibility either. See id. § 3E1.1 cmt. n. 3. It is up to the district court to determine whether a defendant qualifies for this downward adjustment using

the appropriate considerations.  In this case, the district court did just that, and therefore we cannot say that the district court committed clear error.

2011 WL 2160551, at *2.  Other United States Courts of Appeals have uniformly affirmed decisions refusing a defendant a 2-level reduction pursuant to U.S.S.G. § 3E1.1(a) for an eleventh-hour acceptance of responsibility.  See, e.g., United States v. Diaz-Gaudarama, 614 F.3d at 390-91 (denying 2-level reduction for defendant who first attempted to enter a guilty plea the day trial was to commence, before jury selection); United States v. Montero, 336 F. App'x at 942 (holding that a defendant who pled guilty to conspiracy to induce aliens to enter the United States was not eligible for two-point reduction for acceptance of responsibility, because the defendant "did not offer his plea until the morning his trial was to begin, thus necessitating significant trial preparation by the government and the transportation of witnesses from across the state, and inconveniencing the jury pool which was already assigned to the trial," and stating that "[t]he district court's reliance on the timing of [the defendant's] plea and the context in which it was offered is in full accord with § 3E1.1(a), the explanatory comments accompanying that section, and the cases interpreting and applying it"); United States v. Fischer, 551 F.3d at 755 ("[A] district court in denying an acceptance of responsibility reduction [pursuant to U.S.S.G. § 3E1.1(a)] may consider that the guilty plea was 'of the "last hour" variety, offered on the eve of trial.'"  (quoting United States v. Erhart, 415 F.3d at 971)); United States v. Rosalez-Cortez, 19 F.3d at 1219 ("A judge may determine that a defendant has failed to accept responsibility by finding that he failed to demonstrate truthfulness and remorse prior to 'the final hour.'"  (citations omitted)).

The Court therefore denies Manzanares-Sanabria's request for a 2-level reduction in his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a).  While "[t]he reduction of offense level provided by [U.S.S.G. § 3E1.1(a)] recognizes legitimate societal interests" in

"appropriately giv[ing] a lower offense level" to "a defendant who clearly demonstrates acceptance of responsibility for his offense by taking, in a timely fashion," U.S.S.G. § 3E1.1 background, Manzanares-Sanabria's acceptance of responsibility was untimely, and the balance of factors under U.S.S.G. § 3E1.1(a)'s application notes weighs against reducing his offense level.  Accordingly, the Court will not decrease his offense level for his acceptance of responsibility.

**IT IS ORDERED** that the objection in the Defendant's Obejections [sic] to the Pre-sentence Investigation Report and Sentencing Memorandum, filed February 21, 2011 (Doc. 71), for a 2-level reduction, pursuant to U.S.S.G. § 3E1.1(a), in Defendant Roger Manzanares-Sanabria's offense level is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
   United States Attorney
Norman Cairns
Holland S. Kastrin
   Assistant United States Attorneys
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Christin K. Kennedy
Albuquerque, New Mexico

*Attorney for the Defendant*

-29-